# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CITY OF NEODESHA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTIONS** |
| | ) | |
| **v.** | ) | **Nos. 15-4025-KHV through** |
| | ) | **15-4844-KHV and No. 15-4847-KHV** |
| | ) | **[Consolidated under No. 15-4014-KHV** |
| **BP CORPORATION NORTH** | ) | **for purposes of remand motion only]** |
| **AMERICA INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On December 19, 2014, the City of Neodesha, Kansas filed 821 complaints in Neodesha Municipal Court alleging that BP Corporation North America Inc., had violated the City waste ordinance.[1]  On January 28, 2015, BP filed notices of removal in the 821 cases.  See Case Nos. 15-4025 through 15-4844 and 15-4847-KHV (Municipal Court Case Nos. 2014-1202, et seq.).  This matter comes before the Court on the Motion For Remand (Primary Motion) (Doc. #14) which the City filed February 10, 2015 in Case No. 15-4014-KHV.  These cases require interpretation of newly enacted provisions of the Neodesha Municipal Code and present novel issues of law.  For reasons set forth below, the Court finds that the City's motion to remand should be overruled.

---

[1]      Also on December 19, 2014, the City filed ten complaints in Neodesha Municipal Court alleging that BP and BP employee Tammy Brendel had violated City nuisance ordinances. On January 27 and 28, 2015, defendants filed notices of removal of those ten cases.  See Case Nos. 15-4014-KHV, 15-4016-KHV through 15-4024-KHV.  The City has filed motions to remand those cases, and the Court will address those motions in a separate memorandum and order.

I.      **Factual And Procedural Background**

Standard Oil, the predecessor of BP, owned and operated an oil refinery in Neodesha for 74 years, from 1897 to 1970.  The refinery leaked petroleum by-products into ground water and subsurface soil.  In March of 2004, the City, individually and as a class representative for all real property owners in Neodesha, filed a civil suit against BP and related entities in the District Court of Wilson County, Kansas.  Plaintiffs alleged negligence, strict liability, nuisance, trespass, violation of K.S.A. § 65-6203,[2] unjust enrichment, fraudulent concealment/fraud by silence, breach of fiduciary duty and breach of contract.[3]  Plaintiffs sought damages and declaratory and injunctive relief, including remediation.  After a 17-week trial which began in August of 2007, a jury found for BP on all claims.  Notwithstanding the verdict, the trial court entered judgment for plaintiffs on the class claim that BP was strictly liable for water contamination from the refinery.  In an interlocutory appeal, the Kansas Supreme Court reversed and remanded with directions that the district court reinstate the jury verdict and enter judgment for BP on all claims.  See City of Neodesha v. BP Corp., 295 Kan. 298 (2012).  Plaintiffs then moved for a new trial.  The district court denied that motion.  Plaintiffs appealed.  On August 22, 2014, the Court of Appeals affirmed judgment for BP.  See City of Neodesha v. BP Corp., 50 Kan. App. 2d 731 (2014), review denied, Oct. 7, 2015.[4]

Meanwhile, on November 12, 2014, while the petition for review was pending in the Kansas

---

[2]      K.S.A. § 65-6203 creates legal liability for accidental release or discharge of materials detrimental to water or soil.

[3]      In that underlying state litigation, plaintiffs did not seek to hold BP liable for municipal ordinance violations.

[4]      Under Kansas Supreme Court Rule 8.03(g), the decision of the Court of Appeals was final on the date of the decision denying review.

Supreme Court, the Board of Commissioners of Neodesha expanded the substantive provisions of the city waste ordinance.  Presumably, its purpose in doing so was to specifically cover the contamination at issue in the underlying state litigation.  See Appendix, Section 36-407. Specifically, the Board amended the existing Section 36-407 waste ordinance to require that owners and occupants maintain their premises free of industrial and hazardous wastes, see Amended Section 36-407(b), and made it unlawful (1) to allow hazardous or industrial wastes to accumulate or run off by natural or unnatural migration on or under the surface, see Amended Section 36-407(a); (2) to accumulate industrial waste, hazardous waste or spillage, see Amended Section 36-407(d); or (3) for any person or entity responsible for industrial, bulky or hazardous wastes, to allow such wastes to trespass or migrate, naturally or unnaturally, on or under the property of another, see Amended Section 36-407(e).  See Neodesha, Ks. Ordinance No. 1634.[5]  The Board also enacted new penalties for violations of the waste ordinance.  Specifically, it enacted Section 36-415 to provide "civil penalties" of $500 to $1,000 per day for violation of Section 36-407, effective on the date of publication (November 20, 2014).  See Appendix, Section 36-415.

Thirty days after the revised ordinances went into effect, on December 19, 2014, the City filed 821complaints in Neodesha Municipal Court, alleging that BP had violated Amended Section 36-407.  Each complaint alleged that as to a specific tract of property in the City, from September 1, 2009 through December 19, 2014 and beyond, BP violated Section 36-407(a) (Counts One and

---

[5]        Former Section 36-407(a) made it unlawful to scatter waste "on" any public grounds; subsection (b) required a person to maintain "his premises" in a clean and sanitary manner; and subsection (c) was directed at an "owner or occupant" and expressly excluded "producers of industrial, bulky and hazardous waste."  Subsection (d) made it "unlawful to accumulate refuse, solid waste, or garbage" in an unapproved manner.  Former Section 36-407 did not contain a subsection (e).  Arguably the former Section 36-407 did not reach groundwater and subsurface soil contamination on property which BP did not own or occupy.

Two); Section 36-407(b) (Count Three); Section 36-407(c) (Count Four) and Section 36-407(d) (Count Five).  See, e.g., Doc. #1-2 filed January 28, 2015 in Case No. 15-4025-KHV.  See Appendix, Waste Complaint.  For each tract, the pertinent complaint charged separate violations of Section 36-407.  As provided by a new Code provision, Section 26-1, the city administrator signed the unsworn complaints.[6]

On January 27 and 28, 2015, BP filed notices of removal in the 821 cases.  See Case Nos. 15-4025-KHV through 15-4844-KHV, and Case No. 15-4847-KHV (Municipal Court Nos. 2014-1202, et seq.).[7]  The City asks the Court to remand these cases, arguing that the Court lacks subject matter jurisdiction because they are not "civil actions" that can be removed under 28 U.S.C. §§ 1332 and 1441.

## II.    Legal Standards

A defendant may remove a state court civil action if a federal court has original jurisdiction over the claim.  28 U.S.C. § 1441(a); see Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)

---

[6]    Under the previous Code, the city administrator had no authority to sign unsworn complaints.  New Section 26-1 provides that the City Administrator may electronically sign complaints.

[7]    On February 9, 2015, Magistrate Judge James P. Judge O'Hara ordered that the 821 cases which BP removed on January 27 and 28, 2015, as well as ten additional cases which BP and Brendel removed on January 28, be consolidated for purposes of remand issues.  See Order (Doc. #11) filed February 9, 2015.  The purpose of the consolidation was administrative convenience for the Court and the parties.  Judge O'Hara noted that the parties agreed that all of the cases shared common issues regarding the anticipated motion to remand, and that the additional ten cases (Case Nos. 15-4014-KHV and 15-4016-KHV through 15-4024-KHV) presented additional issues regarding the anticipated motion to remand.  Judge O'Hara ordered the parties to file two sets of briefs addressing the appropriateness of remand: one set related to the 821 cases ("the primary motion"), and a second set related to the ten cases, with both sets to be filed only in the first filed case, 15-4014-KHV.  The Court addresses the additional questions raised in the ten cases in a separate order.

(civil action removable if plaintiff could have originally brought action in federal court).[8]  Because

federal courts are courts of limited jurisdiction, the law imposes a presumption against federal

jurisdiction.  See Frederick & Warinner v. Lundgren, 962 F.Supp. 1580, 1582 (D. Kan. 1997) (citing

Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974)).  It requires the Court to deny

jurisdiction in all cases where such jurisdiction does not affirmatively appear in the record.  See Ins.

Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982).

Accordingly, federal courts strictly construe removal statutes and resolve all doubts in favor of

remand.[9]  Defendant bears the burden to demonstrate the propriety of removal from state to federal

---

[8]      Section 1446 of Title 28, United States Code, governs the procedure for removal. Section 1446(a) requires that a defendant seeking removal to federal court file a notice of removal "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  A defendant must file a notice of removal within 30 days from the date when the case qualifies for federal jurisdiction.  See Caterpillar v. Lewis, 519 U.S. 61, 68-69 (1996); 28 U.S.C. § 1446(b).

[9]      Defendant argues that the Supreme Court ruling in Dart Cherokee Basin Operating Co. v. Owens, 135 S.Ct. 547 (2014), altered the presumption against removal jurisdiction.  In Dart Cherokee, which arose in the context of the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453, the Supreme Court clarified that a notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  See id. at 554 (district court should not consider extrinsic evidence to determine amount in controversy unless plaintiff contests or court questions defendant's allegation). In so ruling, the Supreme Court stated that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."  Id. The Supreme Court declined to address whether a presumption "is proper in mine-run diversity cases."  Id.; see William Safire, The Way We Live Now: On Language; The Vapors, N.Y. Times Magazine, March 24, 2002 at 24 (noting that Justice Ruth Bader Ginsburg had used phrase "mine run" three times in opinions in recent years; explaining that this variant of "run of the mill" and "run of the kiln" came out of bituminous coal industry and like its cousins, is an "extraordinary way" of saying "ordinary").

This Court has found no Tenth Circuit case which directly addresses the impact of Dart Cherokee on any presumption against removal jurisdiction.  After Dart Cherokee, cases in the District of Kansas and other districts in the Tenth Circuit have continued to recite the presumption. See In re Syngenta AG MIR 162 Corn Litig., MDL No. 2591, No. 14-md-2591-JWL, 2015 WL 2092435, at *2 (D. Kan. May 5, 2015); Beasley v. Progressive NW Ins. Co., No. 14-2543-JAR-
(continued...)

-5-

court.  Baby C v. Price, 138 Fed. App'x 81, 83 (10th Cir. 2005); Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).

BP asserts that this Court has subject matter jurisdiction under 28 U.S.C. § 1332, the general diversity jurisdiction statute, which provides that a federal district court has original jurisdiction over "civil actions" in which the parties are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).[10]  As the party requesting removal, BP has satisfied its obligation to provide "a short and plain statement of the grounds for removal."  Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 551, 553-54 (2014) (citing 28 U.S.C § 1446(a)).  To assess diversity jurisdiction, the Court looks to the claims in the state court complaint at the time of removal.  See Manguno v. Prudential Prop. & Cas. Ins.

---

[9](...continued)
GLR,  2015 WL 630566, at *3 (D. Kan. Feb. 12, 2015); see also Sandel v. Quality Stone Veneer, Inc., No. 15-cv-01956-PAB, 2015 WL 530247, at *1 (D. Colo. Sept. 10, 2015) (remanding because notice of removal did not allege federal question or basis for diversity jurisdiction); De La Rosa v. Reliable, Inc., 113 F. Supp. 3d 1135, 1155 (D. N.M. June 27, 2015); Gabbert v. Wells Fargo Home Mortg., No. 1:15-CV-16 TS, 2015 WL 3685331, at *2 (D. Utah June 12, 2015) (remanding where amount in controversy did not clearly exceed $75,000).  But see Bruning v. City of Guthrie, Okla., 101 F. Supp.3d 1142, 1145-45 (W.D. Okla. 2015) (questioning validity of presumption that courts resolve all doubts against removal, even before Dart Cherokee) (citing Breuer v. Jim's Concrete of Brevard, Inc., 538 U.S. 691 [](2003) (since amendment of removal statute in 1948, no question that whenever action qualifies for removal, burden on plaintiff to find express exception which prevents removal).  Whether the law imposes a presumption against removal in "mine-run" diversity cases is an interesting issue.  Ultimately, it is not dispositive in this case and the Court need not address it further.

[10]     Section 1332 provides in relevant part as follows:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
>     (1) citizens of different States . . .

28 U.S.C. § 1332.

Co., 276 F.3d 720, 723 (5th Cir. 2002).

**III.** **Analysis**

The City urges the Court to remand because the waste ordinance complaints which it filed in Neodesha Municipal Court on December 19, 2014 are not "civil actions" under 28 U.S.C. §§ 1332 and 1441(a).[11]  Specifically, the City argues that the complaints are criminal or quasi-criminal actions which seek to impose a punishment or penalty to enforce a public right.

In the notices of removal, BP asserts that the complaints allege violations of Municipal Code Section 36-407 for which the Code explicitly provides "civil penalties," and that under K. S. A. § 21-5102, an offense (other than a cigarette or traffic infraction) is not criminal unless imprisonment is a potential penalty.  BP argues that because Amended Section 36-415 does not authorize imprisonment for violations of Amended Section 36-407, the charged violations are civil actions which are removable under 28 U.S.C. § 1441(a).  In response to the City's motion to remand, BP more specifically notes that the new penalty provisions (1) explicitly provide for only monetary penalties and costs of remediation, (2) refer to the monetary penalties as "civil penalties" and (3) provide that costs or fees shall be enforced as "judgments for payment of money in civil cases." See BP Corporation North America's Response To Plaintiff's Motion For Remand (Primary Motion) (Doc. #23) filed March 3, 2015 at 19-22 (quoting Amended Section 36-415).

Federal law determines whether a state court action is removable under the federal removal statute. 14 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3721, at 36-37 (4th ed. 2009 & Supp. 2010); see Mach v. Triple D. Supply, LLC., 773 F. Supp. 2d 1018, 1045

---

[11]  The City concedes that the matter in controversy meets the jurisdictional amount and that the parties are diverse.

(D. N.Mex. 2011); see also Grubbs v. Gen. Elec. Corp., 405 U.S. 699, 705 (1972).  State law is relevant, however, to determine whether an action is a "civil action" and thus removable under Section 1441(a).  See Mach, 773 F. Supp. 2d at 1030; Nungesser v. Bryant, No. 07-1285-WEB, 2007 WL 4374022, at *6  (D. Kan. Dec. 7, 2007).

As noted, BP bears the burden of demonstrating that removal was proper.  To satisfy that burden, it relies on the face of the complaints, the language of the Neodesha Municipal Code, the Kansas statutory definition of a crime, see K. S. A. § 21-5102, and federal and state case law.  The Court agrees that all of these sources bear on the analysis.

The interpretation of an ordinance is a question of law.  State v. Engles, 270 Kan. 530, 532-33 (2001).  Under the fundamental rule of statutory construction, the intent of the legislature governs, and when a statute is plain and unambiguous, a court must give effect to the intention of the legislature, rather than determine what the law should or should not be.  See State v. Van Hoet, 277 Kan. 815, 826 (2004).  Where the face of the statute leaves its construction uncertain, a court may look to legislative history, the circumstances of its enactment and the purpose and effect the statute may have under proposed constructions.  Id.  A court must determine legislative intent from the entire act, and give effect to every part of it if possible.  Robinett v. Haskell Co., 270 Kan. 95, 100-01 (2000).  Further, a court should attempt to reconcile the different provisions so as to make them "consistent, harmonious, and sensible."  Id.

A.     Face Of Complaints

BP correctly notes that the language of the waste complaints almost entirely tracks the exact language of revised Section 36-407.  Four of the five counts invoke the precise language from

revised Section 36-407.[12]   See Appendix, Complaint, Case No. 15-cv-4025 (Doc. #1).   The fifth

_____

[12]      Count 1 alleges that BP violated Section  36-407(a) as follows:

> throw, place, deposit, or allow to accumulate, leave, or cause to be placed or
> deposited, *or run off by natural or unnatural migration, upon the surface or under
> the surface of any real property located in the City, namely*: the alley in Annie
> Casburn Addition to the City of Neodesha in the City of Neodesha, Kansas, refuse
> or solid wastes *(including hazardous wastes aud industrial wastes)*, namely: benzene
> and/or other hydrocarbons.

See e.g., Appendix, Complaint, Case No. 15-cv-4025-KHV (Doc. #1) (language which amendment
added in italics).

> Count 2 alleges that BP violated Section 36-407(a) as follows:

> throw, place, deposit, or allow to accumulate, leave, or cause to be placed or
> deposited, or run off by natural or unnatural migration, upon the surface or under the
> surface of any real property located in the City; namely public property, including
> the sidewalks, gutters and public easement which exist on the alley in Annie Casburn
> Addition to the City of Neodesha in the City of Neodesha, Kansas, refuse or solid
> wastes *(including hazardous wastes and industrial wastes)*, namely: benzene and/or
> other hydrocarbons.

Id. (language which amendment added in italics).

> Count 3 alleges that BP violated Section 36-407(b) as follows:

> Fail to maintain its premises in a clean and sanitary manner, free from refuse and
> solid waste *(including industrial and hazardous wastes* namely: benzene and/or other
> hydrocarbons[)] in the City of Neodesha, Kansas, and, as such, caused a violation of
> § 36-407(b) to exist on the alley in Annie Casburn Addition to the City of Neodesha
> in the City of Neodesha, Kansas.

Id. (language which amendment added in italics).

> Count 5 alleges that BP violated Section 36-407(d) as follows:

> Accumulating refuse, solid waste, *industrial waste, hazardous waste*, or garbage,
> namely: benzene and other hydrocarbons in a manner not approved by the sanitation
> in the City of Neodesha, Kansas, and, as such, caused a public nuisance to exist on
> the alley in Annie Casburn Addition to the City of Neodesha in the City of

(continued...)

count (Count 4) alleges that BP violated Section 36-407(c), which the City did not amend on November 12, 2014.[13]  Count 4 therefore tracks the language of both the old and the new Section 36-407(c).  BP argues even though Count 4 tracks language which is identical in both the old and new Section 36-407(c), the entire complaint – read as a whole – asserts violations of Amended Section 36-407.  For several reasons, the Court agrees.

First, on a lot-by-lot basis, the complaints charge separate violations of Section 36-407 under the new penalty provisions but not under the old ones.  See § 36-415.  Second, as required by new Section 26-1, the city administrator signed the unsworn complaints; under the previous code, the city administrator had no authority to issue unsworn complaints.

B.      Language Of Neodesha Municipal Code

BP asserts that the amended penalty provision, Section 36-415, explicitly authorizes civil penalties (not criminal penalties) for violations of Section 36-407, and that actions to recover such penalties are necessarily civil actions.  Newly enacted Section 36-415 states that it provides "civil penalties" for violations of Section 36-407 and that costs or fees shall be enforced as judgments for payment of money in "civil cases."  See Section 36-415 (conviction under subsections 36-407(a)

---

[12](...continued)
Neodesha, Kansas.

Id. (language which amendment added in italics).

[13]      Count 4 alleges that BP violated Section 36-407(c) by:

Failing to dispose of all refuse, namely benzene and other hydrocarbons, in a clean and sanitary manner, placing the same in approved containers for collection and disposal by the city, its agents or employees, in the City of Neodesha, Kansas, and, as such, caused a violation of § 36-407(c) to exist on the alley in Annie Casburn Addition to the City of Neodesha in the City of Neodesha, Kansas.

through (d) results in penalty not less than $500 or more than $1,000; each consecutive 24-hour period constitutes separate offense).

As noted, the waste complaints allege violations of Section 36-407 beginning in 2009. The City asserts that because the complaints include violations that occurred before November 20, 2014, the effective date of the new ordinance, the complaints actually allege violations of the prior version of Section 36-407, which is criminal because violations are punishable by fines or imprisonment.[14] As noted above, the complaints track the language of the revised Code and their clear import is to charge violations of Amended Section 36-407. The allegations of the complaints belie the City's assertion that it filed the 821 complaints only to charge violations of the prior version of Section 36-407,[15] and that any similarity between the allegations of the complaints and the exact language of the new waste ordinance must be ignored.

The City also argues that the new penalty provisions of Section 36-415 are "ineffective" because under the Code, a "sentence" must be "specified in the section that defines the offense;" otherwise, the sentence defaults to the sentence provided for a Class C violation. Memorandum In Support Of Motion For Remand (Doc. #15) filed February 10, 2015 at 11 (citing Sections 1-7(c); (d)(4)). The City contends that the new civil penalty provisions are invalid because they are not

---

[14]     The prior version of the waste ordinance did not provide a specific penalty or class of violation. The City asserts that the default penalty provisions of Section 1-7(c) and (d), which provide for a term of confinement not to exceed one month or a fine of up to $500, would therefore apply to the entirety of each complaint.

[15]     The City could voluntarily dismiss the claims which it has explicitly alleged under the new ordinance or otherwise disavow any right to seek civil penalties under new Section 36-415. It has not done so, and the Court cannot credit the argument that the City does not assert claims which plainly appear on the face of the complaints.

contained within Section 36-407, the section that defines the new offenses.  The City argues that the default penalty provisions of Sections 1-7(c) and (d) must therefore apply and because they only provide criminal penalties, imprisonment or fines up to $500, the complaints are criminal in nature.

This argument is without merit.

The Court first notes that by definition, a "civil penalty" is not a "sentence."  See Black's Law Dictionary,1247, 1485 (9th ed. 2009) ("civil penalty" is fine assessed for violation of statute or regulation; "sentence" is punishment imposed on criminal wrongdoer).  Further, if the new penalty provision is invalid, either party can raise that issue in a motion to dismiss.[16]  Here, the Court looks only to the face of the complaints, which charge violations of Amended Section 36-407.

The City's argument that the new penalty provisions are a nullity is ironic, if not audacious. The Court notes that counsel drafted the ordinance in response to a resounding defeat in state court litigation, in an obvious effort to reverse the City's losses in that case.  BP is the obvious target of the ordinance, for the record contains no suggestion that the City has ever sought to enforce it against anyone but BP.  Moreover, the City filed 821 suits within 30 days of the effective date of the new ordinance, seeking to enforce legislation which the City now claims is meaningless or inapplicable.

Because the ordinance is not ambiguous, the Court need not address legislative history.  See State v. Van Hoet, 277 Kan. 815, 826 (2004) (when statute plain and unambiguous, court must give effect to intention of legislature).  If the face of the ordinance did leave its construction uncertain, the Court would look to legislative history, the circumstances of its enactment and the purpose and

---

[16]     As noted, the City is free to dismiss claims which it alleges under the new ordinance or to disavow any right to seek penalties under Section 36-415.  It has not done so.  Nor has it expressly sought imprisonment or fines from BP.

effect the statute may have under proposed constructions.  Robinett v. Haskell Co., 270 Kan. 95, 100-01 (2000).

Here, it is illogical to conclude that the City repealed the former Section 36-407, enacted a new waste ordinance, enacted new penalties for violations of the new ordinance, and within 30 days filed 821 lawsuits under the new ordinances – but actually intended to seek relief under the prior ordinances because it believed that the newly enacted penalty provisions were null and void.  Courts presume that the legislature does not intend to enact useless or meaningless legislation, see Davey v. Hedden, 260 Kan. 413, 419-20 (1996); and must avoid interpreting a statute to render part of it "surplusage."  See State v. Van Hoet, 277 Kan. 815, 826-27 (2004).  Applying these rules of statutory construction, the Court first finds, as noted, that a civil penalty is not a sentence.  Even if it were, legislative history unambiguously shows that the City intended to apply the new civil penalty provision of Section 36-415 to violations of Amended Section 36-407.[17]

C.    Kansas Statutory Definition Of A Crime

Kansas statutory law supports BP's contention that the monetary penalty set out in Section 36-415 renders the complaints civil rather than criminal actions.  Kansas law generally classifies offenses as criminal only if imprisonment is an authorized penalty.  Under K.S.A. § 21-5102, a "crime" is an act or omission defined by law for which, upon conviction, a sentence of death,

---

[17]    Obviously, as noted above, the City is not required to litigate its right to the new civil penalties.  It can voluntarily dismiss such claims and only seek imprisonment and fines up to $500 under the default penalty provision, Section 1-7(c,) and (d).  The Court expresses no opinion whether criminal penalty claims would survive a motion to dismiss or for summary judgment or require remand for lack of subject matter jurisdiction.

imprisonment or fine, or both imprisonment and fine, is authorized.[18]  Here, the Municipal Code expressly provides a "civil penalty" for the charged violations of the new waste ordinance.

The City asserts that even if the waste ordinance authorizes civil penalties, the complaints filed in Neodesha Municipal Court cannot initiate civil actions because municipal courts in Kansas have no civil jurisdiction.  See Kan. Mun. Ct. Handbook (2012 ed.) (Chapter 3) at 3-1 (municipal court has no power to decide disputes between private parties).  If so, the City filed all 821 civil cases in the wrong court.  The fact that it did so does not change the civil nature of these proceedings.  See 28 U.S.C. § 1441(f) ("The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim.").

The City also asserts that a proceeding under the Municipal Code is criminal because it must prove the accused guilty of a violation beyond a reasonable doubt, see Kan. Mun. Ct. Manual Section 8.06(B) (2013 ed.), and this evidentiary standard is normally reserved for criminal cases. BP counters that certain civil cases use the "reasonable doubt" standard.  See, e.g., In re Ward, 35 Kan. App. 2d 356, 364 (Kan. Ct. App. 2006) (burden of proof for civil commitment "beyond a reasonable doubt") (citing K.S.A. § 59-29a07(a), (e)).  The City also notes that when a defendant who is found guilty in municipal court appeals to Kansas district court, the district court treats the matter as a criminal proceeding.  See City of Ensign v. Hartnett, 302 P.3d 45 (table), 2013 WL 2936333, at *1-2 (Kan. App. June 7, 2013) (motion for summary judgment improper in appeal to district court following municipal court conviction; such motion not available to criminal

---

[18]      Under K.S.A. § 21-5102, in the case of a traffic infraction or cigarette or tobacco infraction, a "crime" is an act or omission defined by law for which, upon conviction, a sentence of a fine is authorized.

-14-

defendants).  But the fact that a municipal code proceeding provides procedural protections that are usually reserved for criminal trials does not turn these ordinance proceedings into criminal prosecutions.  See, e.g., Allen v. Illinois, 478 U.S. 364, 371 (1986) (in sexually dangerous persons commitment proceeding, right to demand proof beyond reasonable doubt did not render proceeding criminal).  Lawmakers can decide what standard of proof applies to particular claims.  See, e.g., BHC, LC v. Bally Gaming, Inc, 985 F. Supp.2d 1276, 1288-89 (D. Kan. 2013) (Kansas law requires plaintiffs to prove fraudulent inducement by clear and convincing evidence); Adamson v. Bicknell, 295 Kan. 879, 882-83 (2012) (Kansas statute requires proof of punitive damages by clear and convincing evidence).

> D.      Federal And State Case Law

To shed light on whether the waste complaints provide civil penalties and are therefore civil actions under 28 U.S.C. § 1441(a), the Court also consults case law.  BP argues that under Tull v. United States, 481 U.S. 412 (1987), the proceedings and penalties are civil.  In Tull, defendant faced civil penalties for pollution under the Clean Water Act ("CWA").[19]  481 U.S. at 414.  The government proceeded under the CWA civil enforcement mechanism instead of its criminal enforcement provision.  Id. at 415-421; cf. United States v. Pruett, 681 F.3d 232, 237 (5th Cir. 2012) (seeking criminal penalties under CWA); compare 33 U.S.C. § 1319(c)(2) (criminal penalties of $50,000 per day) with 33 U.S.C. § 1319(d) (civil penalties no more than $25,000 per day).  Defendant demanded a jury trial on the issue whether the contaminated property qualified as a wetland.  The district court and the court of appeals ruled that defendant was not entitled to a jury

---

[19]      Under the CWA, penalties accrued on a daily basis, as do the penalties under Section 36-415 of the Neodesha Municipal Code.

trial under the Seventh Amendment, which guarantees a jury trial in a civil action.  <u>Tull</u>, 481 U.S. at 415-16.

In <u>Tull</u>, the Supreme Court set out the test for the right to a jury trial under the Seventh Amendment, as follows:

> The Court has construed [the Seventh Amendment] to require a jury trial on the merits in those actions that are analogous to "Suits at common law."  Prior to the Amendment's adoption, a jury trial was customary in suits brought in the English *law* courts. In contrast, those actions that are analogous to 18th-century cases tried in courts of equity or admiralty do not require a jury trial.
>
> To determine whether a statutory action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty, the Court must examine both the nature of the action and of the remedy sought. First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.  Second, we examine the remedy sought and determine whether it is legal or equitable in nature.

<u>Id.</u> at 417 (internal citations omitted).  The Supreme Court found that defendant was entitled to a jury trial as to liability but not as to the amount of the penalty.  The Supreme Court noted that at common law, a civil penalty was intended to punish culpable individuals, as opposed to a remedy intended to restore the status quo.  <u>Id.</u> at 422.  An action for a civil penalty could only be enforced in courts of law.  <u>Id.</u>  Defendant was therefore entitled to have a jury to decide the issue of his liability for a civil penalty.  <u>Id.</u>

The Court next found that assessment of the amount of a civil penalty was not a fundamental element of the right to trial by jury, and therefore Congress could set the penalty or could delegate assessment of the amount of civil penalties to trial judges.  <u>See id.</u> at 426-27.  Thus defendant did not have a right to have a jury determine the amount of the penalty.

BP argues that if civil penalties under the CWA were a form of criminal punishment, the

Supreme Court would have analyzed the right to a jury trial under the Sixth Amendment rather than the Seventh Amendment.  In <u>Tull</u>, the Supreme Court essentially assumed that the CWA action was a civil proceeding and addressed what type of civil action it was – legal or equitable.  Following <u>Tull</u>, the waste ordinances at issue here – which are similar to the CWA provisions – give rise to a civil cause of action.

Some courts have found that actions to remedy violations of ordinances which seek to impose  penalties to enforce a public right are not civil actions but are criminal or quasi-criminal in nature,  and thus not removable.[20]  <u>See, e.g.</u>, <u>Georgia v. Fleck & Assocs.</u>, 622 F. Supp. 256 (N.D.

---

[20]     The City cites <u>Wisconsin v. Pelican</u> for the proposition that the court must look to the nature of the right asserted.  <u>See</u> <u>Wisconsin v. Pelican</u>, 127 U.S. 265, 286-87 (1888), <u>overruled in part on other grounds by</u> <u>Milwaukee Cnty. v. M.E. White Co.,</u> 269 U.S. 268 (1935) (district court had jurisdiction to enforce obligation to pay state taxes because case not penal action.)  In <u>Pelican</u>, the state had secured a judgment against an insurance company for violation of a state statute which required insurance companies to file annual financial statements.  The state sought to enforce the judgment in the United States Supreme Court under its original jurisdiction.  <u>See</u> 127 U.S. at 287.  The Supreme Court noted that original jurisdiction had traditionally excluded penal matters as well as a state's suit for recovery of pecuniary penalties.  <u>Id.</u> at 290, 293-94 (original jurisdiction of controversies between state and citizens of another state does not extend to suit by state to recover penalties for breach of municipal laws).  The Court cited the Judiciary Act of 1789, which limited its original jurisdiction to "controversies of a civil nature."  <u>Id.</u> at 297.  The Supreme Court determined that the suit was criminal in nature because it was an offense against the state rather than a "private injury;" the prosecution was in the name of the state and the penalty would accrue to the state.  <u>Id.</u> at 299.

Ga. 1985);[21] Racine Cnty v. Deligiannis, 380 F. Supp 1406, 1407 (E.D. Wis. 1974).[22] Fleck, Deligiannis and the other cases on which the City relies rest primarily on Iowa v. Chicago, B. & Q.R. Co., 37 F. 497 (S.D. Iowa 1889). Chicago, B. & Q. construed an earlier version of the removal statute which authorized removal of cases "of a civil nature." There, the district court considered whether a suit for penalties and forfeiture was a suit "of a civil nature." The court found that though civil in form, the action was of a quasi-criminal nature and therefore not removable. Id. at 501 (court looks beyond form to purpose, object and nature of the action). In 1948, Congress changed the language of the removal statute from "suits of a civil nature" to "civil actions." The cases on which the City relies do not address this change in statutory language. See, e.g., Quinn v. Book Named "Sixty Erotic Drawings From Juliette", 316 F. Supp. 289, 291-92 (D. Mass. 1970) (following Chicago B&Q but not addressing absence of "civil nature" phrase in 28 U.S.C. § 1441(a) or legal significance of new "civil action" phrase); Deligiannis, 380 F. Supp.2d at 1407 (no analysis of difference in statutory text); Fleck, 622 F. Supp. at 258-59 (not addressing change in statutory

_____

[21]   In Georgia v. Fleck, a night club removed a nuisance action brought against it by the State of Georgia. The State argued that the action was criminal in nature and thus not removable under Section 1441(a). Fleck, 622 F.Supp. at 257. The district court agreed, reasoning that (1) the action sought to vindicate public policies against sodomy, lewdness and threats to public health; (2) the action was somewhat penal in nature; (3) the prohibitory nature of the action aided enforcement of Georgia's criminal laws; and (4) any monetary penalty would become public funds. Id. at 258-59. The district court held the action was quasi-criminal and therefore not subject to removal pursuant to Section 1441(a).

[22]   In Racine County v. Deligiannis, the County charged a slaughterhouse owner with violations of zoning ordinances for which he faced a substantial fine and loss of his business. Defendant removed the case, asserting diversity jurisdiction. 380 F. Supp. at 1407. The district court sustained the County's motion to remand, finding that the action was essentially penal in nature because plaintiff prosecuted the action "with a view to vindicating a public right by obtaining judgment on the basis of a prescribed penalty." Id.

-18-

text).[23]   Indeed, their analysis is so conclusory as to be non-persuasive.  In essence, where the underlying cases had both criminal and civil aspects, the courts made default characterizations that the actions were quasi-criminal.  Arguably, they could have as easily defaulted to the opposite characterization.

The Court has not uncovered recent cases which directly address whether a case alleging violation of a municipal ordinance constitutes a "civil action" for purposes of removal based on diversity jurisdiction.[24]   Cases from other jurisdictions which tangentially address the issue undertake a detailed analysis of individual ordinances rather than the City's argument, i.e. that an action to vindicate a public right is categorically *not* a civil action and thus not removable.  See, e.g.,

---

[23]      The other cases on which the City relies are likewise not helpful.  See, e.g., Montgomery, Ala. v. Postal Tel.-Cable Co., 218 F. 471,474-76 (M.D. Ala. 1914) (following Chicago, B. & Q. when removal statute still included "of a civil nature" rather than "civil action" language); Mulligan v. W. Union Tel. Co., 20 F. Supp. 953, 957 (D.N.J. 1937) (same); State ex rel. Warren v. F. W Woolworth Co., 30 F. Supp. 410, 411 (W.D. Mo. 1939) (same); see also Crivello v. Bd. of Adjustment Of Middlesex, 183 F. Supp. 826, 828 (D.N.J. 1960).

[24]      BP cites several cases in which defendants successfully removed actions filed in a municipal court to federal court, see BP's Supplemental Brief (Doc. #52), at 5 n.4, but these cases do not  address whether a violation of a municipal ordinance constitutes a civil action for purposes of removal based on diversity jurisdiction.  See Foerlich v. CACH, LLC, 289 F.R.D. 454 (S.D. Ohio 2013) (removal based on federal question jurisdiction under Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.); DWC Co. v. CSX Transp. Inc ., No. 2:08-cv-718, 2009 WL 150671 (S.D. Ohio Jan. 21, 2009) (removal of claims under Carmack Amendment, 49 U.S.C. § 14706); Famous Realty v. Flota Mercante Grancolumbiana SA., 81 F. Supp. 553, 554-55 (E.D.N.Y. 1948) (corporation filed contract action for possession of premises and rent in municipal court; federal district court found diversity jurisdiction, noting that "[u]nder the statute, the right of removal is absolute").

BP also asserts that in Wisoff v. City of Schenectady, N.Y., No. 1:07-CV-34 (NAM/DRH), 2009 WL 606139 (N.D.N.Y. March 9, 2009) the court allowed removal of a municipal ordinance violation.  See BP's Supplemental Brief (Doc. #52) at 5.  In Wisoff, however, plaintiff challenged the constitutionality of a municipal ordinance and the City removed the action to federal court based on federal question jurisdiction.  See id. at *2-3.

Berkowitz v. Brahma Inv. Grp., Inc., No. 14-cv-543, 2014 WL 4206946 (S.D. Ohio Aug. 25, 2014) (denying motion to remand action to declare real property public nuisance; rejecting city argument that suit was quasi-criminal, noting that under state code, city could bring "equity" action to abate nuisance).[25]

In another context, i.e. where a plaintiff alleges that an ordinance or statute violates constitutional rights, courts must determine whether a proceeding is civil or criminal in nature. See, e.g., Hudson v. United States, 522 U.S. 93, 99 (1997) (addressing double jeopardy challenge to monetary penalties and occupational debarment).[26]  In Hudson, the Supreme Court articulated a two-part test for determining whether a particular penalty is civil or criminal.  First, the court determines whether the legislature "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other."  Id.  Second, even if the legislature intended a civil sanction, the court considers whether the statutory scheme is "so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal

---

[25]     Some courts have exercised diversity jurisdiction over local nuisance actions without addressing the "civil action" issue, perhaps because the parties did not raise it.  See Village of Depue v. Exxon Mobile Corp., 537 F.3d 775, 784-85 (7th Cir. 2008).  In Village of Depue, the district court found that it had diversity jurisdiction over a state court action asserting violation of a village nuisance ordinance.  The district court also held that Illinois law pre-empted the village ordinance. The Seventh Circuit agreed but did not specifically address the issue of "civil action" under Section 1441.  Id.; see Dart v. Craigslist, Inc., 665 F. Supp.2d 961 (N.D. Ill. 2009) (diversity jurisdiction over public nuisance action as to amount in controversy; no mention of requirement of "civil action").

[26]     Courts have addressed whether legislation is criminal or civil where a defendant invokes various constitutional protections.  See, e.g., Smith v. Doe, 538 U.S. 84, 92, 123 (2003) (addressing ex post facto challenge to sex offender registration and notification law); Kansas v. Hendricks, 521 U.S. 346, 361 (1997) (addressing double jeopardy and ex post facto challenges to sexually violent predator civil commitment proceeding); Allen v. Illinois, 478 U.S. 364, 368 (1986) (addressing privilege against self-incrimination challenge to sexually dangerous persons in civil commitment proceeding); see also Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 630 (1988).

penalty." Id. (internal citations omitted).  The second prong of Hudson requires a court to consider

the following non-exclusive factors:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether
> it has historically been regarded as a punishment; (3) whether it comes into play only
> on a finding of scienter; (4) whether its operation will promote the traditional aims
> of punishment – retribution and deterrence; (5) whether the behavior to which it
> applies is already a crime; (6) whether an alternative purpose to which it may
> rationally be connected is assignable for it; and (7) whether it appears excessive in
> relation to the alternative purpose assigned.

Id. at 99-100; see Simpson v. Bouker, 249 F.3d 1204, 1212 (10th Cir. 2001); Turner v. Glickman,

207 F.3d 419, 429 (7th Cir. 2000).  Once a court determines that the legislature intended the sanction

to be civil, "[o]nly the clearest proof" will overcome the presumption that the legislature intended

to establish a civil penalty.  See Hudson, 522 U.S. at 100.

As to the first prong of Hudson, the penalty provision of the amended Neodesha waste

ordinance explicitly provides "civil penalties."  See Section 36-415(a).  The legislative intent in this

regard is crystal-clear.

The second prong of Hudson asks whether "the statutory scheme is so punitive either in

purpose or effect as to negate [the City's] intention" to establish a civil penalty.  United States v.

Ward, 448 U.S. 242, 248-49 (1980).  The Court finds that it is not, and that the seven factors set out

in Hudson do not establish by "clearest proof" that the nominally civil ordinance penalty is actually

a criminal penalty.

First, the waste ordinance provides a civil monetary penalty, and monetary assessments do

not constitute an "affirmative disability or restraint."  Simpson, 249 F.3d at 1212 (citing

Noriega-Perez v. United States, 179 F.3d 1166, 1172 (9th Cir. 1999)).  Second, courts have not

historically viewed monetary penalties as exclusively criminal.  Hudson, 522 at 104; see Simpson,

-21-

249 F.3d at 1213.  But see Harmelin v. Michigan, 501 U.S. 957, 978 n.9 (1991) (plurality opinion) (characterizing "disproportionate" fines as "certainly punishment").  Third, the waste ordinance does not require scienter, which weighs in favor of finding that it is civil.  See Kansas v. Hendricks, 521 U.S. 346, 362 (1997) (existence of scienter important factor in distinguishing criminal from civil statues).  Fourth, although enforcement of the ordinances could serve as a deterrent, see Robdelo, 444 F. Supp. 2d at 904, the presence of a deterrent purpose does not necessarily render a sanction criminal because deterrence may serve civil as well as criminal goals.  See Hudson, 522 U.S. at 105; Kilper v. City of Arnold, Mo., No. 4:08cvo-267-TCM, 2009 WL 2208404, at *16 (E.D. Mo. July 23, 2009).

In arguments related to the fifth factor, whether the behavior to which the penalty applies is already a crime,  BP cites Armored Servs., Inc. v. City of Wichita, 248 Kan. 136, 139 (1991).  In Armored Services, the Kansas Supreme Court characterized as "civil penalties" certain fines imposed under a municipal ordinance which penalized false alarms.  Id. (fines were civil penalties because ordinance regulated businesses).  Other Kansas cases, however, have characterized ordinance violations as criminal.  For example, in City of Lincoln Center v. Farmway Co-op, Inc., 298 Kan. 540, 549 (2013), plaintiff asserted that a municipal ordinance was unconstitutionally vague.  Based on the language of the ordinance – "it is unlawful for any person to" – the Court found that it was criminal and applied a higher standard of certainty to the vagueness analysis.  Id.; see also City of Ensign, Kan. v. Hartnett, 302 P.3d 45 (Table) (Kan. App. June 7, 2013).  As in Farmway, the ordinances at issue here use the "unlawful" language – which supports a finding that a violation of the waste ordinance is a crime.  See Farmway, 298 Kan. at 549; Harnett, 302 P.2d at 45. Accordingly, the Court finds that the fifth factor suggests that this proceeding is a criminal

proceeding.

Sixth, the Court finds that while the waste ordinance could have a purpose of punishment, it could also have a purpose of creating resources to clean up waste and protect public health.  Public health and safety are legitimate nonpunitive objectives.  See Smith v. Doe, 538 U.S. 84, 102 (2003).

Seventh, depending on the facts of particular cases, the amount of penalties might or might not be disproportionate to the purpose of promoting public health.  In the original litigation in Kansas state court, the City and other plaintiffs sought $280,000,000 in remediation costs.  See Notice of Removal (Doc. #1) in Case No. 15-4014-KHV at 3 (citing City of Neodesha v. BP Corp. N. Am. Inc., No. 2004-cv-19, Final Pretrial Order at 11 (Wilson County District Court, Kansas, Aug. 21, 2007)).  Here, the fines could be very significant.  On this record, however, the Court cannot conclude that the ostensibly civil penalties ($500 to $1000 per day per parcel of property) are so disproportionate to the purposes of the new waste ordinance that they must be viewed as penal in nature.

Weighing all of these factors, the Court finds that the City has not provided the "clearest evidence" which is required to outweigh its express intent to create a civil penalty.  Indeed, the clearest evidence is that when the City lost the civil remediation cases, it enacted new legislation to generate alternative sources of revenue to clean up the contamination – not to punish crimes which BP was committing in the City of Neodesha.

Based on all of the above, BP has met its burden to show that the  complaints which allege violations of Neodesha Code § 36-407 are "civil actions" for purposes of removal under Section 1441.

**IT IS THEREFORE ORDERED** that the <u>Motion For Remand (Primary Motion)</u>

(Doc. #14) which the City filed on February 10, 2015 in Case No. 15-4014-KHV be and hereby is

**OVERRULED**.

Dated this 31st day of March, 2016 at Kansas City, Kansas.

<u>s/Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge

# APPENDIX

## Waste Complaints

Each of the waste complaints charged violations of Neodesha Municipal Code § 36-407 as to a specific piece of property in Neodesha, Kansas.  For example:

### Count One

The undersigned complains that on or about the 1st day of September, A.D., 2009 and continuing every day thereafter through the present date and beyond, BP Corporation North America, Inc. did violate § 36-407(a) of the Neodesha City Code, and in that it did unlawfully violate said code by:

> *throw, place, deposit, or allow to accumulate, leave, or cause to be placed or deposited, or run off by natural or unnatural migration, upon the surface or under the surface of any real property located in the City, namely: the alley in Annie Casburn Addition to the City of Neodesha in the City of Neodesha, Kansas, refuse or solid wastes (including hazardous wastes aud industrial wastes), namely: benzene and/or other hydrocarbons.*

### Count Two

The undersigned complains that on or about the 1st day of September, A.D., 2009, and continuing every day thereafter through the present date and beyond, BP Corporation North America, Inc. did violate § 36-407(a) of the Neodesha City Code, and in that it did unlawfully violate said code by:

> *throw, place, deposit, or allow to accumulate, leave, or cause to be placed or deposited, or run off by natural or unnatural migration, upon the surface or under the surface of any real property located in the City; namely public property, including the sidewalks, gutters and public easement which exist on the alley in Annie Casburn Addition to the City of Neodesha in the City of Neodesha, Kansas, refuse or solid wastes (including hazardous wastes and industrial wastes), namely: benzene and/or other hydrocarbons.*

### Count Three

The undersigned complains that on or about the 1st day of September, A.D., 2009, and continuing every day thereafter through the present date and beyond, BP Corporation North America, Inc. did violate § 36-407(b) of the Neodesha City Code, [and in that it] did unlawfully violate said code by:

-25-

*Fail to maintain its premises in a clean and sanitary manner, free from refuse and solid waste (including industrial and hazardous wastes, namely: benzene and/or other hydrocarbons[)] in the City of Neodesha, Kansas, and, as such, caused a violation of § 36-407(b) to exist on the alley in Annie Casburn Addition to the City of Neodesha in the City of Neodesha, Kansas.*

<u>Count Four</u>

The undersigned complains that on or about the 1st day of September, A.D., 2009, and continuing every day thereafter through the present date and beyond, BP Corporation North America, Inc. did violate § 36-407(c) of the Neodesha City Code, and in that it did unlawfully violate said code by:

*Failing to dispose of all refuse, namely benzene and other hydrocarbons, in a clean and sanitary manner, placing the same in approved containers for collection and disposal by the city, its agents or employees, in the City of Neodesha, Kansas, and, as such, caused a violation of § 36-407(c) to exist on the alley in Annie Casburn Addition to the City of Neodesha in the City of Neodesha, Kansas.*

<u>Count Five</u>

The undersigned complains that on or about the 1st day of September, A.D., 2009, and continuing every day thereafter through the present date and beyond, BP Corporation North America, Inc. did violate § 36-407(d) of the Neodesha City, and in that it did unlawfully violate said code by:

*Accumulating refuse, solid waste, industrial waste, hazardous waste, or garbage, namely: benzene and other hydrocarbons in a manner not approved by the sanitation in the City of Neodesha, Kansas, and, as such, caused a public nuisance to exist on the alley in Annie Casburn Addition to the City of Neodesha in the City of Neodesha, Kansas.*

<u>Complaint</u> (Doc. #1-2) in Case No. 15-4025-KHV.

-26-

## Section 36-407 (Waste Ordinance)

[language added in 2014 amendments in bold; language deleted in 2014 amendments in brackets]

(a) It shall be unlawful for any person or **entity** to throw, place, deposit, or allow to accumulate, leave, or cause to be placed or deposited [on]**, or run off by natural or unnatural migration, upon the surface or under the surface of any real property located in the city, namely:** any parking, sidewalk, gutter, street, alley, thoroughfare, park, or public grounds, **private property, lot or lots,** any refuse or solid wastes **including hazardous wastes and industrial wastes** * * * .

(b) Every person, including the owner and occupant of any premises within the city limits, shall maintain his premises in a clean and sanitary manner, free from all refuse and solid waste **including industrial and hazardous wastes**.

(c) Every owner or occupant of any premises within the city, except producers of industrial, bulky and hazardous waste, shall dispose of all refuse in a clean and sanitary manner * * *.

(d) It shall be unlawful to accumulate refuse, solid waste, **industrial waste, hazardous waste,** or garbage in any manner not approved by the sanitation officer, and any such unauthorized accumulation **and/or spillage** is hereby declared to be a nuisance, and is prohibited.

(**e**) **It shall be unlawful for any person or entity responsible for industrial, bulky or hazardous wastes to allow such wastes to trespass or migrate, naturally or unnaturally, upon or under the property of another.**

Ordinance No. 1634, November 12, 2014 (amending Neodesha City Code 1997).

## Section 36-415

[newly enacted in 2014]

(a)    A separate violation may be charged under any provision of section 36-407 for each lot on which unauthorized wastes exist.

(b)    A conviction under any of the provisions of subsections 36-407 (a) through (d) shall result in a penalty of not less than $500.00 or more than $1,000.00. Each consecutive 24-hour period during or in which a violation occurs or continues shall constitute a separate offense and shall be punished as such under the provisions of this section.

(c)    Upon conviction, if the offender fails to remediate the nuisance within 30 days following the entry of judgment, the city or its authorized agents shall have the authority to implement removal or remedial actions. The actions may include, but not

be limited to, the prevention of further groundwater contamination; installation of groundwater monitoring wells; collection and laboratory testing of water, soil and waste samples; and cleanup and disposal of regulated substances.

(d)     In addition to the assessment of civil penalties as allowed by this section, the offender shall be also be charged with costs incurred or expected to be incurred by the city or its authorized agents in the prosecution of the violation and in the conduct of removal or remedial actions, including but not limited to all consultant, engineering, contractor and attorney fees. In determining the amount and method of payment of such sum, the court shall take into account the financial resources of the offender and the nature of the burden that payment of such sum will impose. Any costs or fees charged to the defendant under this paragraph shall be enforced as judgments for payment of money in civil cases.

Ordinance No. 1635, November 12, 2014.

## Neodesha Code Section 1-7

**General penalty, continuing violations**

a) In this section the term "violation of this Code" means any of the following: (1) Doing an act that is prohibited or made or declared unlawful, an offense, a violation or a misdemeanor by ordinance or by rule or regulation authorized by ordinance. (2) Failure to perform an act that is required to be performed by ordinance or by rule or regulation authorized by ordinance. (3) Failure to perform an act if the failure is prohibited or is made or declared unlawful, an offense, a violation or a misdemeanor by ordinance or by rule or regulation authorized by ordinance. (4) Counseling, aiding or abetting a violation of this Code as set forth in subsections (a)(1) through (a)(3) of this section.

(c) For the purpose of sentencing, unless otherwise specified in this Code, the following classes of violations of this Code and the punishment and terms of confinement authorized for each class are established * * * (3) Class C violation, the sentence for which shall be a definite term of confinement in the county jail which shall be fixed by the court and shall not exceed one month; and (4) Unclassified violations, which shall include all offenses declared to be violations without specification as to class, the sentence for which shall be in accordance with the sentence specified in the section that defines the offense; if no penalty is provided, the sentence shall be the same penalty as provided in this section for a Class C violation.

(d) A person convicted of a violation of this Code may, in addition to, or instead of, the confinement authorized by law, be sentenced to pay a fine which shall be fixed by the court, unless otherwise specified in this Code, as follows: (3) Class C violation, a sum not exceeding $500.00. (4) Unclassified violation, any sum

authorized by the section that defines the offense. If no penalty is provided for same, the fine shall not exceed the fine provided in this section for a Class C violation.

(e) Except as otherwise provided by law or ordinance: (1) With respect to violations of this Code that are continuous with respect to time, each day that the violation continues is a separate offense. (2) With respect to all other violations of this Code, each act constitutes a separate offense.

(f) Violations of this Code that are continuous with respect to time are a public nuisance and may be abated by injunctive or other equitable relief. The imposition of a penalty does not prevent injunctive relief.

### **Neodesha Code Section 1-5 (e)**

Any violation of this Code that is alleged to have occurred prior to the effective date of the current Code or any amendments shall be governed by the ordinance in full force and effect at the time of the alleged violation, as if repeal or amendment of the prior version had not occurred.